UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Oscar M-S., <br><br>  Petitioner, <br><br> v. <br><br> Merrick B. Garland et al., <br><br>  Respondents. | Case No. 0:21-cv-1341 (WMW/KMM) <br><br> **REPORT AND RECOMMENDATION** |

This matter is before the Court on Oscar M-S.'s Petition for Writ of Habeas Corpus. [ECF No. 1]. Mr. M-S., who has been in the custody of Immigration and Customs Enforcement (ICE) since June of last year, contends that the procedures at his immigration bond hearing violated due process, and he seeks immediate release or, alternatively, a new bond hearing with the burden of proof placed on the government. He also argues that the length of his detention violates his due process rights. For the reasons that follow, the Court recommends granting the Petition in part and ordering a new bond hearing.

**I.   Background[1]**

Mr. M-S. is a citizen of Mexico who, according to the government, has unlawfully entered the country on multiple occasions, including reentering following his 2009 voluntary removal. He was arrested in July 2019 on charges of malicious punishment of a child and

---

[1] The following factual background is taken from the government's Response and the relevant supporting documents. [ECF Nos. 7–8]. In most respects, Mr. M-S. does not dispute the procedural and factual history recited by the government. [ECF No. 10 at 3–5]. As to two aspects of his criminal history, Mr. M-S. challenges the government's characterization of the record. However, neither of those matters are relevant to the Court's evaluation of Mr. M-S.'s due process argument.

domestic assault, the latter of which was later dismissed. [ECF No. 8-1 at 32–47]. In January 2020, a Lyon County jury found that Mr. M-S. had used unreasonable force or cruel discipline on a girl in his care when she was 10 to 12 years old. [ECF No. 8-1 at 49–51]. Mr. M-S. was sentenced to 360 days in the Lyon County Jail, 330 days of which were stayed. [ECF No. 8-1 at 49]. He began serving his thirty-day sentence on May 15, 2020.

Immigration officials lodged a detainer on Mr. M-S., and when he had finished serving his criminal sentence, he was taken into ICE custody. Mr. M-S. was arrested on charges of removability and detained pending administrative review of his case. [ECF No. 8-1 at 1, 7, 54]. On June 18, 2020, the Immigration Judge (IJ) sustained the charges of removability on the basis that Mr. M-S. was unlawfully in the United States. [ECF No. 8-1 at 54].

Following the initial decision to detain Mr. M-S. pending removal, he made a motion for bond redetermination. On June 22, 2020, an IJ held a bond redetermination hearing, and denied bond.[2] [ECF No. 8-1 at 54]. The IJ found that Mr. M-S. "did not meet his burden to demonstrate that he would not pose a danger to the community." *Id.* Although Mr. M-S. has several times sought review of his detention status and denial of bond, it appears from the record that only a single bond hearing was held. [ECF No. 8 at ¶¶ 25, 28, 30–32, 37; ECF No. 8-1 at 57, 81, 85–86].

In addition to challenging his detention, Mr. M-S. also sought relief from removal, applying for cancellation of removal, withholding of removal, protection under the convention against torture, and asylum. [*See* ECF No. 8-1 at 58]. The requests and applications were denied

---

[2] Although this hearing is referred to as a "bond redetermination" proceeding, it appears to be Mr. M-S.'s only detention hearing. The records indicate that the initial decision to detain Mr. M-S. pending removal was an administrative decision, and not accompanied by a hearing. [ECF No. 8-1 at 53].

by an immigration judge, who ordered Mr. M-S. removed to Mexico. [*See* ECF No. 8-1 at 58–78]. Mr. M-S. reserved appeal. [ECF No. 8-1 at 59]. His appeal is currently pending. [ECF No. 8 at ¶ 39].

## II.     Discussion

Mr. M-S. is detained pursuant to 8 U.S.C. § 1226(a) following his June 2020 bond hearing. He argues that his continued detention violates the due process clause, and that the decision to detain him based on his criminal conviction was unreasonable, because he is neither a flight risk nor a danger to the community. M-S. argues that his due process rights were violated when the IJ placed the burden on him to show that he was not a danger to the community at the bond redetermination hearing, rather than placing that burden on the government.

In response, Mr. Garland and the other respondents (hereinafter "the government") argue that they have the statutory and constitutional authority to detain noncitizens in some circumstances, and that Mr. M-S.'s case meets those criteria. They also argue that ICE's decision about where to place the burden of proof at Mr. M-S.'s bond hearing is a reasonable interpretation of the statutes and therefore entitled to deference.

The Court concludes that due process requires that Mr. M-S. receive a bond hearing in which the government bears the burden of proof. The Court therefore recommends that Mr. M-S.'s petition be granted in part, and that respondents ensure that he receive a bond redetermination hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he is a danger to the community in order to continue detaining him. The Court further concludes that Mr. M-S. has established prejudice from the misallocation of the burden of proof at his initial hearing, and therefor remand is required.

### A.     **Burden of Proof and the Due Process Clause**

Mr. M-S. is detained pursuant to § 1226(a), which permits the government to detain or release on bond a noncitizen who is placed in removal proceedings. *Jennings v. Rodriguez*, 138 S. Ct. 830, 837–38 (2018). Where a noncitizen is detained, he or she may request a bond hearing before an Immigration Judge. While the statute is silent as to which party bears the burden of proof at such a hearing, agency regulations mandate that the burden is on the detainee to prove, "to the satisfaction of the officer[,] that . . . release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 236.1(c)(8). The question before the Court is not whether this regulatory scheme is a reasonable interpretation of a silent statutory provision, but whether its application to Mr. M-S. violated his constitutional rights. *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018) ("[W]hether or not *Chevron* deference applies to the BIA's interpretation of the statute, the issue before the Court is whether the Constitution requires the government to bear the burden of proof in § 1226(a) bond hearings."); *Cisneros v. Napolitano*, No. 13-cv-700 (JNE/JJK), 2013 WL 3353939, at *8 (D. Minn. July 3, 2013) ("[A]n agency's interpretation of an ambiguous statute will not receive *Chevron* deference when the interpretation raises constitutional questions."). The Court concludes that it did.

### A Broad Consensus in the Jurisprudence

Whether due process requires the government to bear the burden of proof at § 1226(a) bond hearings is an unresolved question in this Circuit and in this district.[3] However, other

---

[3] One Report and Recommendation from this district concluded that "the Due Process Clause requires the imposition of a clear and convincing evidentiary burden on the government at bond hearings held pursuant to § 1226(a)." *Melie I. v. Secretary of Homeland Security*, No. 18-cv-1657 (ECT/HB), 2019 WL 3292070, at *7 (D. Minn. Jan. 7, 2019). However, the district judge rejected this portion of the R&R, concluding that the principle of constitutional avoidance precluded answering this question because it was likely that the petitioner would be subject to mandatory detention under § 1226(c), which the government intended to seek on remand. *Melie*

4

circuits and many other districts have answered this question, and a significant majority of those cases have done so in the affirmative. *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) ("We therefore conclude that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)."); *Gonzalez v. Barr*, 955 F.3d 762, 772 (9th Cir. 2020) ("[D]ue process requires the government to prove 'by clear and convincing evidence that an alien is a flight risk or danger to the community to justify the denial of bond.'" (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011))); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2019) ("A number of district courts have taken up the question . . . and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (quotation omitted)); *Diaz-Ceja v. McAleenan*, No. 19-cv-824-NYW, 2019 WL 2774211, at *7 (D. Col. July 2, 2019) ("The clear weight of authority from courts to have considered the question . . . have come to the same conclusion."); *Dubon Miranda v. Barr*, 463 F. Supp. 3d 632, 645 (D.M.D. 2020) (describing the conclusion that "due process requires that the *government* bear the burden of justifying a noncitizen's § 1226(a) detention" as "the consensus view"); *J.G. v. Warden, Irwin Cty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1335 (M.D. Ga. 2020) ("This Court joins the Ninth and Second Circuits as well as the overwhelming majority of district courts that hold the Government must bear the burden of proof to justify a noncitizen's detention pending removal proceedings."); *see Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (holding that noncitizens have a due process right to a new bond hearing with the

---

*I. v. McAleenan*, No. 18-cv-1657 (ECT/HB), 2019 WL 2367161, at *3 (D. Minn. June 5, 2019) (noting that the remand "is made without prejudice to any arguments the Parties may choose to make regarding discretionary detention under § 1226(a) in that immigration proceeding or in a renewed habeas petition"). Here, there appear to be no other dispositive questions which would warrant the Court's avoidance of this constitutional issue.

burden on the government once their detention under § 1226(a) has been "unduly prolonged"); *Reyes v. King*, 19 Civ. 8674 (KPF), 2021 WL 3727614, at *7 n.7 (S.D.N.Y. Aug. 20, 2021) (noting that the Second Circuit's *Lopez* decision does not overrule "the overwhelming consensus of Courts in this district" that due process requires the government to bear the burden at § 1226(a) hearings). *But see Asolo v. Prim*, 21 CV 500059, 2021 WL 3472635, at *6 (N.D. Ill. Aug. 6, 2021) (holding that "the constitution requires the government to provide clear and convincing evidence . . . *only* at the point that detention is no longer reasonable" (emphasis added)). This Court's review of the case law confirms that "overwhelming consensus" accurately describes the state of national jurisprudence regarding whether the government should bear the burden of proof at a bond hearing under § 1226(a).

Against this weight of authority, the government cites to *Borbot v. Warden Hudson Cty. Corr. Facility*. 906 F.3d 274 (3d Cir. 2018), which it argues stands for the proposition that due process is satisfied despite a § 1226(a) hearing which placed the burden on the ICE detainee rather than the government. For three reasons, this Court is not persuaded by *Borbot*. First, it almost goes without saying that *Borbot* is not binding on this Court. But more critically, it is not at all clear that the *Borbot* decision can even be read as holding that a bond redetermination hearing which places the burden of proof on the detainee under § 1226(a) does not violate the Due Process Clause. As characterized by the *Borbot* Court, the petitioner there did not challenge the constitutional adequacy of his initial bond hearing. *Id.* at 276–77 ("The duration of Borbot's detention is the sole basis for his due process challenge."); *see id.* at 279 ("Borbot's habeas petition seeks to compel a second bond hearing despite alleging no constitutional defect in the one he received."). While the Third Circuit "perceive[d] no problem with" the fact that the burden remains on § 1226(a) detainees while § 1226(c) detainees are at some point entitled to a

hearing with the burden on the government, the court did not analyze what due process requires for § 1226(a) hearings.[4] Indeed, the Third Circuit held that it "need not decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing." *Id.* at 280. Admittedly, several district courts in the Third Circuit have since concluded that *Borbot* held that due process does not require the government to bear the burden at § 1226(a) hearings. *Gomez v. Barr*, 19-CV-1818, 2020 WL 1504735, at *3 (M.D. Pa. Mar. 30, 2020) (collecting cases). Nonetheless, the absence of a square holding on Due Process, and the omission of any analysis of the requirements of procedural due process, limit *Borbot*'s usefulness as authority. And the First Circuit recently suggested that even *Borbot's* indirect holding regarding due process has been vitiated by the Third Circuit's subsequent decision in *German Santos v. Warden Pike County Correctional Facility*.[5] 965 F.3d 203 (3d Cir. 2020).

---

[4] The court cursorily mentioned that this burden allocation did not "run afoul of the Equal Protection Clause," because § 1226(a) detainees are not similarly situated to § 1226(c) detainees. *Id.* at 279.

[5]     [A]lthough the court in *Borbot* stated that the petitioner had been granted "meaningful process" under section 1226(a), it made that statement in order to contrast section 1226(a) with section 1226(c), under which there is no bond hearing. Furthermore, even assuming that "meaningful process" language indicates that the Third Circuit might have viewed the procedures under section 1226(a) to be constitutionally adequate, the Third Circuit's subsequent decision in *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020), casts doubt on the continuing validity of that view. In *German Santos*, the court held that the government is required to bear the burden of proving by clear and convincing evidence that a noncitizen is a danger or flight risk once detention has become unreasonably prolonged under section 1226(c). *Id.* at 213–14. That ruling was based on the *Addington* line of cases, and we struggle to see why the Third Circuit would have required those heightened protections if its statement in *Borbot*—that the procedures under section 1226(a) provide "meaningful process"—indicates that those procedures comply with due process.

*Hernandez-Lara*, 10 F.4th at 34–35.

Finally, even if *Borbot* can be characterized as definitively reflecting the opinion of one Court of Appeals that § 1226(a) places the burden of proof on the detainee without violating due process, it is a clear outlier in the caselaw. The Court finds more persuasive the reasoning of the First and Ninth Circuits and the "overwhelming majority of district courts" that reach the opposing conclusion. *J.G.*, 501 F. Supp. 3d at 1335; *accord Dubon Miranda*, 463 F. Supp. 3d at 645 (D.M.D. 2020).

### *The Mathews v. Eldridge Balancing Test*

To determine whether placing the burden of proof on the detainee at a §1226(a) bond hearing violates due process, the Court must apply the three-factor balancing tests in *Mathews v. Eldridge*.[6] 424 U.S. 319, 335 (1976). The Court weighs (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* As explored already, the strong majority of courts to have conducted this balancing test in the context of § 1226(a) have found that it requires the government to bear the burden of proof, and this Court reads the scales the same way.

As for the first factor, the private interest affected by the action is freedom from physical detention. "The most elemental of liberty interests [is] the interest in being free from physical detention . . . ." *Hamdi v. Rumsfeld*, 542, U.S. 507 (2004). The Supreme Court has held that

---

[6] The Due Process Clause provides that "no person shall . . . be deprived of life, liberty, or property . . . without due process of law." U.S. Const. amend V. It is well-established that noncitizens are "persons" under the Due Process Clause and therefore afforded its protections. *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Mathews v. Diaz*, 426 U.S. 67, 78 (1976).

"commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," even in civil commitment cases. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Mr. M-S. has already been detained for over 18 months. This is a significant liberty deprivation, and as a result the first *Mathews* factor weighs heavily in his favor. *J.G.*, 501 F. Supp. 3d at 1336–37 (finding that "the first *Mathews* factor weighs heavily in Petitioner's favor" because "immigration detention is an extraordinary liberty deprivation that must be carefully limited." (quotation omitted)); *Jimenez v. Decker*, 21-cv-880 (VSB), 2021 WL 826752, at *8 (S.D.N.Y. Mar. 3, 2021) ("The private interest implicated by official action in detention pursuant to § 1226(a) is the most significant liberty interest there is—the interest in being free from imprisonment.'" (quotation omitted)).

The second factor—the risk of erroneous deprivation through the procedures used—also weighs in favor of Mr. M-S. As the procedures stand, the burden is on the noncitizen to collect and present evidence pertaining to their flight risk and danger, all while incarcerated and with limited ability to contact legal counsel or other individuals to help. This increases the risk of an underdeveloped record at the bond hearing, which in turn increases the risk of error in the IJ's findings. The government, in contrast, has access to numerous resources and the ability to gather records and other evidence more easily. *See, e.g.*, 8 U.S.C. §§ 1226(d), 1360, 1365a, 1376, 1377, 1378, 1722. Placing the burden of proof on the government, then, would ensure a more efficient and thorough development of the record regarding whether the noncitizen presents a danger or a flight risk. As a result, the second factor weighs in favor of Mr. M-S.'s position. *See, e.g*, *Velasco Lopez*, 978 F.3d at 852–53 (finding that the second *Mathews* factor weighed heavily in the petitioner's favor in part because he "was neither a flight risk nor a danger to the community

9

but was unable to prove that was the case," while "the Government had substantial resources to deploy").

Finally, the third factor—the government's interest in the procedure as it stands—does not weigh significantly in the government's favor, if at all. The Court is persuaded by the reasoning in the cases that have held that, while the government has a strong interest in civil detention while removal proceedings are pending, it also has a "strong interest in avoiding erroneous deprivations of liberty." *J.G.*, 501 F. Supp. 3d at 1340 ("Incarceration that serves no legitimate purpose wastes taxpayers' money and hinders judicial efficiency. . . . [T]he third factor is neutral."); *Hernandez-Lara*, 10 F.4th at 33 ("[G]iven the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial cost, the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative."). Consistent with the majority of cases to analyze this issue, the Court concludes that the third factor weighs in the governments favor, if at all, only minimally.

At bottom, the balancing of the three *Mathews* factors compels the Court to conclude that placing the burden being on Mr. M-S. to demonstrate that he is not a flight risk or potential danger violated his procedural due process rights.[7] Accordingly, the Court recommends ordering another bond redetermination hearing at which the burden of proof is on the government.

---

[7] Mr. M-S. also argues that his due process rights are violated by the length of his detention since his last bond hearing. The Court need not reach a decision regarding whether the length of his detention, on its own, presents a basis for finding a constitutional violation because it finds that the allocation of the burden of proof at his first bond hearing was a constitutional defect requiring reversal. However, the Court notes that Mr. M-S. has been detained for more than 18 months as of today. Even courts that have held that the allocation of the burden of proof becomes unconstitutional after detention becomes overly long would find that 18 months is more than long enough to raise concerns. *See, e.g.*, *Velasco Lopez*, 978 F.3d at 853 ("[A]s the period of confinement grows, so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." (quotation omitted)). The Court concludes that if the analysis regarding reallocating the burden of proof was not

### B. Quantum of Proof

While the Court concludes that the burden of proof at § 1226(a) bond hearings should be on the government, there remains the question of what standard of proof the government must meet to justify continued detention. And although there appears to be more diversity of approach to this question than the question of which party must bear the burden, the Court recommends joining the majority of courts to have addressed this issue by holding that the government must prove by clear and convincing evidence that a noncitizen is a flight risk or a potential danger in order to continue to detain him or her. *E.g.*, *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Drako*, 342 F. Supp. 3d at 346 ("[I]n accordance with the overwhelming majority of courts to have decided the issue, the Court concludes that the government must bear the burden by clear and convincing evidence."); *Dubon Miranda*, 463 F. Supp. 3d at 646–47 (same). *But see*, *Doe v. Tompkins*, 11 F.4th 1, (1st Cir. 2021) ("[T]he government must either (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by a preponderance of the evidence that a noncitizen poses a flight risk." (citing *Hernandez-Lara*, 10 F.4th at 40–41)); *Diaz-Ceja*, 2019 WL 2774211, at *11 (same, but acknowledging that the majority of courts apply the clear-and-convincing standard); *Pensamiento*, 315 F. Supp. 3d at 692 ("Currently, the alien must prove to the satisfaction of the [IJ] that he is neither dangerous nor a flight risk. If that same burden were placed on the Government, the Court is not persuaded that that standard would violate the Due Process Clause" (quotation omitted)).

"[T]he minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about

---

appropriate until a detainee has been held for an extended term, Mr. M-S.'s detention has crossed that line.

how the risk of error should be distributed between the litigants." *Santosky v. Kramer*, 455 U.S. 745, 755 (1982). The Supreme Court has made clear that an "individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state," and that "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence"—namely, clear and convincing evidence. *Addington v. Texas*, 441 U.S. 418, 427 (1983). Applying this reasoning to the immigration context, this district has held that, whether under § 1226(a) or § 1231, the government bears a clear-and-convincing burden of proof at a hearing ordered due to the excessive duration of the noncitizen's detention. *Marco A. C.-P. v. Garland*, No. 20-cv-1698 (JRT/TNL), 2021 WL 1976132, at *5 (D. Minn. May 18, 2021).

> When the United States seeks to deprive a person of their liberty, it is generally held to a higher quantum of proof, and the Supreme Court has established that the intermediate clear and convincing standard is appropriate when the individual interests at stake are both particularly important and more substantial than mere loss of money. . . . [T]he possible injury to Petitioner—unnecessary deprivation of his liberty—is so substantial that "it is improper to ask the individual to share equally with society the risk of error . . . and a clear and convincing standard of proof provides the appropriate level of procedural protection."

*Id.* (quoting *Singh*, 638 F.3d at 1203–04) (quotations omitted). The Court finds this reasoning both more persuasive and more consistent with the Supreme Court's due-process precedent than cases that lean in the other direction, and therefore recommends that the burden borne by the government at the new § 1226(a) bond hearing be to prove by clear and convincing evidence that Mr. M-S. is a either a potential danger or a flight risk.

### C. Prejudice

Finally, the government argues that, even if placing the burden on Mr. M-S. at his first bond hearing did violate the Constitution, he has not shown that the violation prejudiced him.

They argue that, to obtain relief for a due process violation, a petitioner must show "that the outcome of the proceeding may well have been different had there not been any procedural irregularities," and claim that Mr. M-S. cannot do so. *Tun v. Gonzales*, 485 F.3d 1014, 1026 (8th Cir. 2007). The implication of the government's position is that Mr. M-S. would have been detained regardless of which side bore the burden of proof, and therefore he has not met his burden at *this stage* of proving otherwise.

Here, the IJ found that Mr. M-S. posed a danger to the community "[i]n light of the seriousness of [his malicious-punishment] conviction." [ECF No. 8-1 at 56]. While Mr. M-S.'s conviction raises questions about the danger he poses to the community, it seems to be all the IJ based his detention decision on. [ECF No. 8-1 at 55–56]. Mr. M-S. does not appear to have any other criminal history, nor any other particularly aggravating characteristics. On this record, the Court cannot conclude that the outcome of the hearing would certainly have been the same had the burden been on the government to prove by clear and convincing evidence that Mr. M-S. posed a danger to the community. And requiring him to show prejudice at this stage feels discomfitingly similar to reinforcing the error of placing the burden of proof on him at the bond hearing in the first instance. The Court rejects the government's argument that Mr. M-S.'s demonstrated due process violation requires no relief.

### III.     Recommendation

Based on the forgoing, **IT IS HEREBY RECOMMENDED** that Mr. M-S.'s Petition [ECF No. 1] should be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.     Mr. M-S.'s request for immediate release should be **DENIED**.

2.     Mr. M-S. should receive a new bond redetermination hearing before an Immigration Judge within 21 days of any Order adopting this Report and Recommendation. If

the government does not hold an individualized bond hearing within that time frame, then Mr. M-S. should be released.

      3.      At the hearing, the Immigration Judge should place the burden of proof on the government to establish by clear and convincing evidence that Mr. M-S. poses a danger to the community or a risk of flight. If the government fails to meet that burden, Mr. M-S. should be released.

Date: December 20, 2021

         s/ *Katherine Menendez*
         Katherine Menendez
         United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.